UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

CONLEY CORPORATION,                     )
                                        )
                    Plaintiff,          )
                                        )
v.                                      )        Case No. 05-CV-0108-CVE-FHM
                                        )
INDUSA, INC.,                           )
                                        )
                    Defendant.          )

OPINION AND ORDER

On November 8, 2005, United States Magistrate Judge Frank H. McCarthy entered a Report

and Recommendation (Dkt. # 43) on defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P.

12(b)(2), or, Alternatively, Motion to Transfer (Dkt. # 28).   The Magistrate Judge found that

defendant did not have continuous and systematic contacts in Oklahoma and plaintiff's claims did

not arise from the minimum contacts defendant did have in Oklahoma.   Accordingly, he

recommended that the case be dismissed for lack of personal jurisdiction.   Plaintiff filed timely an

objection (Dkt. # 50) pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).   Rule 72(b) provides

that "the district judge to whom the case is assigned shall make a de novo review determination upon

the record, or after additional evidence."   Accordingly, the Court has conducted a de novo review.

I.

Plaintiff manufactures fiberglass piping and its principal place of business is in Tulsa,

Oklahoma.   Defendant is an industrial supplies distributor, which is incorporated in Puerto Rico and

serves the Puerto Rico, Caribbean, and Latin American markets.   Over ten years ago, defendant

contacted plaintiff to solicit its business.[1]   Defendant has purchased fiberglass piping from plaintiff

---

[1]     If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's
        favor.  See Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1417 (10th Cir. 1988).

and resold the goods in Puerto Rico.  The two parties have been in regular contact through telephone

calls and electronic mail to facilitate sales.  The goods are shipped FOB Tulsa, thereby causing the

expense of shipping and risk of loss to pass to defendant when the product is placed in the

possession of the shipper in Oklahoma.  On several occasions, defendant has sent key personnel to

Oklahoma for training.  Defendant places orders with plaintiff in Oklahoma and sends payments to

plaintiff in Oklahoma.

Plaintiff's complaint alleges that defendant "has falsely taken the position that it is the

exclusive distributor of Conley's product in Puerto Rico" and "exceeded [Conley's] recommended

prices to such an extent as to be non-competitive in the [Puerto Rican] market and result in a decline

in Conley's sales in Puerto Rico."  Dkt. # 2, at 2.  Plaintiff also alleges that defendant has made false

statements about Conley to Conley's potential customers in Puerto Rico.  In its complaint, plaintiff

identifies the disputed facts as:

> a.      the customers in Puerto Rico, if any, for which Indusa would act as Conley's
>         exclusive distributor;
> b.      the customers in Puerto Rico, if any, for which Indusa would act as Conley's
>         non-exclusive distributor;
> c.      appropriate pricing and other terms and conditions of sale of Conley's
>         product by Indusa.

Id. at 3.  Plaintiff alleges that it "qualifies as a Law 75 dealer and has 'just cause' to terminate

Plaintiff's business relationship, under Puerto Rico Law No. 75."  Id. at 4.  Plaintiff seeks injunctive

and declaratory relief.

Plaintiff bears the burden of establishing that the Court has personal jurisdiction over

defendant.  OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998).

"When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal

jurisdiction without holding an evidentiary hearing, . . . the plaintiff need only make a prima facie

2

showing of personal jurisdiction to defeat the motion." <u>Id.</u> (citations omitted).  "The plaintiff may

make this <u>prima facie</u> showing by demonstrating, via affidavit or other written materials, facts that

if true would support jurisdiction over the defendant." <u>Id.</u> at 1091.  "In order to defeat a plaintiff's

<u>prima facie</u> showing of jurisdiction, a defendant must present a compelling case demonstrating 'that

the presence of some other considerations would render jurisdiction unreasonable.'" <u>Id.</u> (quoting

<u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 477 (1985)).

 To demonstrate the existence of personal jurisdiction over a nonresident defendant in a

diversity action, plaintiff must demonstrate the existence of every fact required to satisfy both the

forum's long-arm statute and the due process clause of the Constitution.  <u>See</u> Okla. Stat. tit. 12, §

2004(F).   "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is

consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law

collapses into the single due process inquiry." <u>Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.</u>,

205 F.3d 1244, 1247 (10th Cir. 2000) (citing <u>Rambo v. Am. S. Ins. Co.</u>, 839 F.2d 1415, 1416 (10th

Cir. 1988)); <u>see also</u> <u>Hough v. Leonard</u>, 867 P.2d 438, 442 (Okla. 1993).

 "Due process requires that the nonresident defendant's conduct and connection with the

forum state are such that the nonresident could reasonably anticipate being haled into court in that

state." <u>Conoco, Inc. v. Agrico Chemical Co.</u>, 115 P.3d 829, 835 (Okla. 2004) (citing <u>World-Wide</u>

<u>Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980)).  "The Due Process Clause permits the

exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum

contacts between the defendant and the forum State.'" <u>Intercon</u>, 205 F.3d at 1247  (quoting <u>World-</u>

<u>Wide Volkswagen</u>, 444 U.S. at 291).  The existence of such minimum contacts must be shown to

support the exercise of either general jurisdiction or specific jurisdiction.  A court "may, consistent

with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed [its] activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" <u>Intercon</u>, 205 F.3d at 1247 (quoting <u>Burger King</u>, 471 U.S. at 472). "When a plaintiff's cause of action does not arise directly from a defendant's forum related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state." <u>Intercon</u>, 205 F.3d at 1247 (citing <u>Helicopteros Nacionales de Colombia v. Hall</u>, 466 U.S. 408, 414-16 & n.9 (1984)).

## II.

General jurisdiction is not related to the events giving rise to the suit, therefore "courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts" with the forum state. <u>OMI</u>, 149 F.3d at 1091. Factors relevant to whether contacts are "continuous and systematic" include:

Whether the corporate defendant is:
1.  engaged in business in this state;
2.  licensed to do business in this state;
3.  owning, leasing, or controlling property [] or assets in this state;
4.  maintaining employees, offices, agents, or bank accounts in this state;
5.  present in that shareholders reside in this state;
6.  maintaining phone or fax listings within this state;
7.  advertising or soliciting business in this state;
8.  traveling to this state by way of salespersons, etc.;
9.  paying taxes in this state;
10.  visiting potential customers in this state;
11.  recruiting employees in the state;
12.  generating a substantial percentage of its national sales through revenue generated from in-state customers.

4

Lilliard v. Stockton, 267 F. Supp. 2d 1081, 1097-98 (N.D. Okla. 2003) (quoting Soma Medical

International v. Standard Chartered Bank, 196 F.3d 1292, 1295-96 (10th Cir. 1999)).

Plaintiff alleges that a substantial amount of defendant's revenue comes from resale of

plaintiff's products, but defendant's resale is not directed at customers in Oklahoma.  The Court

accepts as true that defendant solicited plaintiff's business in Oklahoma and visited plaintiff in

Oklahoma.  However, plaintiff has failed to submit evidence to counter the affidavit of defendant's

Executive Vice-President, Ramon Riancho Sanchez, who has sworn to the following:

> Indusa is not licensed to do business in Oklahoma, does not sell products in
> Oklahoma and does not maintain employees, offices, agents, or bank accounts in
> Oklahoma.  Indusa does not hire salespersons to travel to Oklahoma to sell products,
> and does not recruit employees in Oklahoma.  Further, Indusa does not pay taxes in
> Oklahoma.
>
> Indusa does not own, lease, or control property (real or personal) or assets in
> Oklahoma.  Indusa does not have shareholders that reside in Oklahoma.  Indusa does
> not maintain phone or fax listings within Oklahoma nor does Indusa advertise in
> Oklahoma.  Indusa does not generate a substantial percentage of its national sales
> through revenue generated in Oklahoma.

Dkt. # 28, Ex. A, at 1.

Indusa's contacts with Oklahoma are less continuous and systematic than such contacts in

Helicopteros that the Supreme Court found to be insufficient for general jurisdiction.  466 U.S. at

416 (finding that a Texas district court could not exercise jurisdiction over a Colombian corporation

that had sent its chief executive officer to Houston for contract negotiations; accepted into its New

York bank accounts checks drawn on a Houston bank; bought equipment and training services from

a Texas corporation; and sent personnel to that corporation's Texas facilities for training).  Plaintiff

has failed to show that Indusa's limited and intermittent contacts with Oklahoma rise to the level of

"continuous and systematic." Accordingly, plaintiff has not made the prima facie showing needed for the exercise of general jurisdiction.

Plaintiff requests the opportunity to conduct discovery regarding the existence of defendant's continuous and systematic contacts with Oklahoma. However, plaintiff is not entitled to discovery at this stage in the proceedings. See Benton v. Cameco Corp., 375 F.3d 1070, 1074 (10th Cir. 2004) (dismissing a case for lack of personal jurisdiction without allowing discovery or conducting an evidentiary hearing); United States v. Swiss American Bank, Ltd., 274 F.3d 610, 625-26 (1st Cir. 2001) ("even when the plaintiff has been diligent and has made a colorable claim for personal jurisdiction, the district court still has broad discretion to decide whether discovery is required.") (citations and quotations omitted).

### III.

When alleged contacts fall short of being "continuous and systematic" so that the exercise of general jurisdiction would be unfair, those contacts may still support the exercise of specific jurisdiction if they are related to plaintiff's claims. World-Wide Volkswagen, 444 U.S. at 291-92 (noting that due process protects defendants from inconvenient forums and prevents states from overreaching the boundaries of their sovereignty). To prove sufficient contacts for the exercise of specific jurisdiction, plaintiff must demonstrate: that defendant has minimum contacts with the forum, thereby having purposefully availed itself of the benefits and protections afforded by Oklahoma laws; that the litigation arises out of or relates to those contacts; and that the exercise of jurisdiction is reasonable as it does not offend notions of fair play and substantial justice. See Id. at 297; Soma, 196 F.3d at 1298; OMI, 149 F.3d at 1091.

**A.      *Minimum Contacts***

Plaintiff alleges several contacts between defendant and Oklahoma:

1.       Defendant sent representatives, including its Executive Vice President Ramon Riancho Sanchez, to plaintiff's facilities in Oklahoma on at least three occasions;

2.       Defendant placed purchase orders for plaintiff's products by sending facsimiles and e-mails to Oklahoma;

3.       Plaintiff's products are shipped FOB Tulsa;

4.       Defendant placed telephone calls to plaintiff in Oklahoma concerning sales, engineering, pricing, and delivery;

5.       Defendant remitted payment for product by check or wire transfer directed to plaintiff or its bank in Oklahoma;

6.       Defendant's representatives threatened suit against plaintiff in correspondence, telephone calls and e-mails directed to plaintiff's office in Oklahoma.

See Dkt. # 32, at 2-3.   Additionally, plaintiff argues that the Magistrate Judge overlooked that

defendant solicited business with plaintiff and Indusa personnel regularly travel to the United States.

For purposes of the jurisdiction analysis, the Court accepts the foregoing as true.

A defendant's contacts are sufficient if "the defendant purposefully directed its activities at

the residents fo the forum, and . . . the plaintiff's claim arises out of or results from actions by the

defendant himself that create a substantial connection with the forum state." OMI, 149 F.3d at 1091

(citation omitted).  As the Magistrate Judge correctly found, while defendant engaged in activities

necessary to facilitate its purchase of, and payment for, products from plaintiff in Oklahoma,

7

plaintiff's claims do not arise from those activities.[2]   In fact, plaintiff's complaint refers to defendant's conduct in Puerto Rico, calls for application of Puerto Rican law, and seeks injunctive relief in Puerto Rico.  Plaintiff's allegation of false statements refers to defendant's statements to Puerto Rican customers that it is plaintiff's exclusive distributor in Puerto Rico.  These statements, therefore, are distinguishable from the one in Brown v. Flowers Indus., Inc., 688 F.2d 328, 332-33 (5th Cir. 1982), where the single defamatory statement was made by defendant during a phone call to the plaintiff's forum and, thus, the defamation claim arose from the contact with the plaintiff's state.

In its objection, plaintiff emphasizes that defendant solicited its business.  See Sheehan Pipe Line Constr. Co. v. Laney Directional Drilling Co., 228 F. Supp. 2d 1271, 1276 (N.D. Okla. 2002) (finding that defendant's solicitation of plaintiff's business was the "most significant" factor in establishing specific jurisdiction).  However, in Sheehan, the Court found that plaintiff's claim of non-payment arose out of defendant's minimum contact of soliciting plaintiff in Oklahoma.  Id. at 1276 ("a nexus exists between Defendant's forum-related contacts and Plaintiff's cause of action for non-payment for services rendered."); see also Pro Axess, Inc. v. Orlux Distribution, Inc., 428

---

[2]      Magistrate Judge McCarthy characterized plaintiff's complaint as follows:

Plaintiff's action . . . arises entirely from defendant's activities in Puerto Rico: defendant sells plaintiff's products in Puerto Rico; plaintiff complains about defendant's pricing of plaintiff's products in Puerto Rico; defendant claims to be plaintiff's exclusive distributer in Puerto Rico; plaintiff seeks an injunction restraining defendant from interfering with plaintiff's customers in Puerto Rico; and plaintiff seeks a declaration that defendant is not its exclusive distributor in Puerto Rico. [Dkt. 2, p. 2-5]. Nothing within plaintiff's complaint arises from any of defendant's contacts with the state of Oklahoma.

Dkt. # 43, at 5.

F.3d 1270, 1275 (10th Cir. 2005) (stating that defendant's solicitation is evidence of "purposeful availed" but is not conclusive).  Plaintiff's complaint does not allege that defendant  failed to pay for purchased products.

Plaintiff argues that <u>Pro Axess</u>, which was decided the same day as the Magistrate Judge's Report and Recommendation, should alter the outcome of the Court's analysis for specific jurisdiction.  However, <u>Pro Axess</u> is distinguishable because, in that case, the defendant's minimum contacts were related to the breach of contract claim.  <u>Id.</u> at 1279 ("Pro Axess's breach of contract claims arose from Sporoptic's solicitation of Pro Axess, development of a business agreement with Pro Axess, and subsequent communications with Pro Axess.  Those same interactions also constitute Sporoptic's contacts with Utah.  Thus, Pro Axess's claims arise out of Sporoptic's contacts with Utah.").  In contrast, plaintiff's claims did not arise from defendant's contacts with Oklahoma. Plaintiff points to defendant's "threatening letter" as a contact with Oklahoma related to its claims. However, in <u>Pro Axess</u>, the Tenth Circuit recognized that a defendant's threat to bring litigation in its own country was irrelevant to the determination of whether jurisdiction existed in the forum state. <u>Id.</u> at 1282, n.9 ("[j]urisdiction involves a court's ability to preside over a lawsuit -- not a party's public posturing early on in a dispute.").

Although plaintiff did not specifically plead breach of contract, it argues that the Magistrate Judge did not give appropriate weight to the contractual relationship between plaintiff and defendant. Presuming plaintiff's claim is for breach of contract, a contract cannot automatically establish minimum contacts.  <u>Burger King</u>, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum . . . the answer clearly is that it cannot.").  However, "with

respect to interstate contractual obligations, . . . parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." Id. at 473.  The question remains whether plaintiff's claims arise from defendant's minimum contacts with Oklahoma and the Courts agrees with Magistrate Judge McCarthy that they do not.

### B. Considerations of Fair Play and Substantial Justice

Even if a defendant's actions created sufficient minimum contacts, a court must still consider whether the exercise of personal jurisdiction over defendant would "offend traditional notions of fair play and substantial justice." International Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945).  "This inquiry requires a determination of whether the district court's exercise of personal jurisdiction is reasonable in light of the circumstances surrounding the case." Intercon, 205 F.3d at 1247 (citing Burger King, 471 U.S. at 477-48).  For this analysis, the Court considers: the burden on the defendant; the forum state's interest in resolving the dispute; the plaintiff's interest in receiving convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering fundamental social policies. Benton, 375 F.3d at 1078 (citations omitted).

"The reasonableness inquiry follows a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction.  The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of minimum contacts." Id. at 1079 (citations omitted).  Based on the sparsity of the minimum related contacts in this case, jurisdiction can be defeated by a minimal showing of unreasonableness.

1.    <u>Burden on Defendant.</u>

Defendant is located in Puerto Rico, has no offices or property in Oklahoma, has no employees in Oklahoma, and is not licensed to do business in Oklahoma.  Personnel of Indusa have previously traveled to Oklahoma, making it clear that defendant has the ability to travel to Oklahoma for business.  However, this Court has no subpoena power over defendant's witnesses in Puerto Rico, Fed. R. Civ. P. 45(b)(2), and the actions about which plaintiff complains took place entirely in Puerto Rico.  This factor weighs against the exercise of jurisdiction over defendant in Oklahoma.

2.    <u>Oklahoma's Interest in Litigating the Dispute.</u>

States have an important interest in providing a forum where their residents can seek redress for injuries caused by out-of-state actors.  Plaintiff alleges that defendant's actions "have caused and will continue to cause irreparable harm to Conley's business."  Dkt. # 2, at 3.  The state's interest is also implicated where resolution of the dispute calls for application of the forum state's laws.  <u>Benton</u>, 375 F.3d at 1079 (dismissing for lack of personal jurisdiction where Canadian law governed the contract in dispute).  There has been no showing that Oklahoma's laws will apply to the dispute.  Further, plaintiff requests a permanent injunction that would control conduct in Puerto Rico and would be enforced there.  This factor weighs against the exercise of jurisdiction over defendant in Oklahoma.

3.    <u>Plaintiff's Interest in Convenient and Effective Relief.</u>

Conley argues that, given the relatively small size of its operation, it would probably suffer a loss of business if personnel are required to leave Oklahoma to pursue litigation.  Nevertheless, plaintiff has not established that it will not receive effective relief in Puerto Rico.  Plaintiff alleges that the Magistrate Judge overlooked the fact that its staff does not speak Spanish and that

defendant's key staff speak English.  However, there is no evidence that language would be an impediment or that plaintiff would otherwise receive an unfair trial in the United States District Court for the District of Puerto Rico.  This factor does not weigh heavily in favor of either party.

4.     Interstate Judicial System's Interest in Obtaining Efficient Resolution.

This factor inquires about the location of the witnesses, where the wrong occurred, what forum's substantive laws govern the case, and whether jurisdiction is necessary to prevent piecemeal litigation.  Id. at 1080.  In its objection to the Report and Recommendation, plaintiff accuses defendant of listing over one hundred unnecessary witnesses located in Puerto Rico to tip the balance in its favor.  Plaintiff admits that there are necessary witnesses located both in Oklahoma and Puerto Rico.  In addition, the wrong allegedly occurred in Puerto Rico, it appears Puerto Rican substantive laws will govern the case, and the requested injunction would enjoin conduct in Puerto Rico.  Further, plaintiff need not sue in Oklahoma to avoid piecemeal litigation.  This factor weighs against the exercise of jurisdiction over defendant in Oklahoma.

5.     State's Interest in Furthering Fundamental Substantive Social Policies.

This factor looks at the extent to which an exercise of personal jurisdiction in the forum would interfere with the sovereignty of another state or nation.  Id.  Puerto Rico has a substantial social policy, codified as Law 75, specifically dealing with relationships between suppliers and dealers.  P.R. Laws Ann. tit. 10, § 278; see Dkt. # 2, at 4; Dkt. # 28, at 18.  Further, the possible issuance of an injunction, the enforcement of which would take place entirely in Puerto Rico, counsels strongly that an exercise of personal jurisdiction in Oklahoma would interfere with the sovereignty of Puerto Rico.  See Asahi Metal Ind. Co., Ltd. v. Superior Court of California, Solano County, 480 U.S. 102, 115 (1987) ("great care and reserve should be exercised when extending our

notions of personal jurisdiction into the international field."). This factor weighs against the exercise of jurisdiction over defendant in Oklahoma.

Because the majority of the five factors weigh in favor of defendant, an exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice.

## IV.

Based upon a careful review of the Report and Recommendation, the objection of plaintiff, defendant's response, and an independent review of the record and the relevant authorities, the Court finds that the Report and Recommendation (Dkt. # 43) is hereby **accepted**. Accordingly, plaintiff's objection to the Report and Recommendation of Magistrate Judge McCarthy (Dkt. # 50) is **overruled** and defendant's motion to dismiss (Dkt. # 28) is **granted**. Consequently, plaintiff's motion for permanent injunction (Dkt. # 5), motion for preliminary injunction (Dkt. # 5), and motion for declaratory relief (Dkt. # 5) are **moot**, and this case is hereby terminated.

**DATED** this 1st day of February, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT